IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEELWORKERS PENSION TRUST<br>By DANIEL A. BOSH, CHAIRMAN | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | ) | C.A. No. 16-190 |
| | ) | |
| THE RENCO GROUP, INC., ILSHAR<br>CAPITAL LLC, BLUE TURTLES, INC.,<br>UNARCO MATERIAL HANDLING, INC.,<br>ITEVA PRODUCTS LLC, THE DOE RUN<br>RESOURCES CORPORATION, and<br>USMAGNESIUM LLC, | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

## **REPORT AND RECOMMENDATION**

ROBERT C. MITCHELL, United States Magistrate Judge.

## **I. RECOMMENDATION**

Presently pending before the Court is Plaintiff's Motion to Stay Arbitration [ECF No. 20], and Defendants' Motion to Dismiss the Amended Complaint [ECF No. 36]. For the reasons stated herein, it is respectfully recommended that the Motion to Dismiss be granted and the Motion to Stay Arbitration be denied.

## **II. REPORT**

### **A. Factual Allegations and Procedural Background**

Steelworkers Pension Trust by Daniel A. Bosh, Chairman (the "SPT") initiated this action on February 22, 2016. The SPT is a multi-employer, defined benefit pension plan making a withdrawal liability claim pursuant to the Employment Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1401(b).

The following facts are alleged in the Amended Complaint [ECF No 33] (hereinafter, "Am. Compl."). The SPT has been providing monthly retirement benefits to its participants and their families since 1953. Am. Compl. ¶ 2. These pension benefits are funded by employer contributions negotiated by various labor unions. Am. Compl. ¶ 2. The SPT has over 500 contributing employers and over 112,000 participants. Am. Compl. ¶ 2. The SPT brings this action to collect $86,181,976 in withdrawal liability owed by Defendants so that the SPT can continue to provide monthly pension checks to support its participants in retirement. Am. Compl. ¶ 3. RG Steel consisted of multiple steel mills that employed thousands of members of the United Steelworkers Union (the "USW") pursuant to various collective bargaining agreements. Am. Compl. ¶ 8. With respect to work performed by USW employees at certain RG Steel mills, RG Steel made monthly pension contributions to the SPT until RG Steel went into bankruptcy and ceased operations in or about August 2012. This triggered RG Steel's withdrawal liability,[1] which continues to be completely unsatisfied. Am. Compl. ¶ 9.

In March 2011, prior to the filing of the bankruptcy petition, Defendant The Renco Group, Inc. ("Renco") purchased RG Steel and thereafter owned 100% of it. Renco is a private holding company; Defendants, Ilshar Capital LLC, Blue Turtles, Inc., Unarco Material Handling, Inc., Inteva Products LLC, the Doe Run Resources Corporation and US Magnesium LLC are subsidiaries of Renco. Am. Compl. ¶¶ 28, 29. Under ERISA with respect to controlled group liability, these defendants are considered sister companies of RG Steel since they are all owned

---

[1] Withdrawal liability is a contributing employer's pro-rata share of a multiemployer, defined benefit pension plan's unfunded vested benefits. Withdrawal liability is triggered when a contributing employer permanently ceases to have an obligation to contribute to an underfunded plan (i.e., terminates a collective bargaining agreement) or permanently ceases all covered operations under the plan (i.e., shuts down).

by Renco. Collectively, with Renco, Defendants are members of and referred to as the "Renco Controlled Group." Am. Compl. ¶ 29.

Both before and after Renco's purchase, RG Steel was a contributing employer to the SPT. On January 17, 2012, when RG Steel was already insolvent and less than a year after purchasing RG Steel, Renco passed 24.5% equity in RG Steel to a subsidiary of Cerberus Capital Management, LP ("Cerberus"), thus reducing its ownership in RG Steel from 100% to 75.5% (the "Cerberus Transaction"). Am. Compl. ¶¶ 13, 177. By reducing its ownership below 80%, according to SPT, Renco believed that it removed RG Steel from the Renco Controlled Group as ERISA provides that one is part of an entity's controlled group if it possesses at least 80% of the shares of all classes of stock in that entity. 26 C.F.R. §1.414(c)-2(b)(2), Am. Compl. ¶ 46. That reduction in ownership was critical to Renco, it is alleged, because otherwise it would be liable for any withdrawal liability that would be triggered by RG Steel; Renco's removal of RG Steel from the Renco Controlled Group was the principal purpose of the Cerberus transaction. Am. Compl. ¶¶ 193, 194.

Five months later on May 31, 2012 RG Steel filed a Chapter 11 Bankruptcy Petition (the "RG Steel Bankruptcy") in the United States District Court for the District of Delaware. Am. Compl. ¶ 206. It substantially ceased its steelmaking operations, thereby triggering withdrawal liability to the SPT of over $86 million. 29 U.S.C. §1383; Am. Compl. ¶ 207. SPT intends to prove that a principal purpose of Renco "pushing" 24.5% equity onto Cerberus was to allow Renco to "evade or avoid" that withdrawal liability because ERISA provides that if "a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied and [withdrawal] liability shall be determined and collected without regard to such transaction." 29 U.S.C. §1392(c). If the transaction is disregarded, it results in Renco remaining the 100%

3

owner of RG Steel at the time of RG Steel's complete withdrawal from the SPT. Thus, Defendants would be jointly and severally liable for the entire RG Steel withdrawal liability. 29 U.S.C. §1301(b)(1); Am. Compl. ¶ 48.

On September 24, 2012, the SPT submitted Proofs of Claim for the withdrawal liability in the RG Steel Bankruptcy to the bankruptcy court-appointed "Claims and Noticing Agent", Kurtzman Carson Consultants, LLC ("KCC"), which in turn included them in a Claims Register that it filed on the bankruptcy docket on January 11, 2013. Am. Compl. ¶¶ 215, 217, 223. SPT alleges that Renco had anticipated the SPT Proofs of Claim because substantial withdrawal liability to the SPT would have been discovered through due diligence or otherwise in relation to the acquisition of RG Steel assets in 2011. SPT further posits that once RG Steel ceased steelmaking operations and filed for bankruptcy protection, Renco would have fully anticipated the SPT's withdrawal liability claim. Am. Compl. ¶ 216.

The Proofs of Claim provided to KCC included both the total amount of the withdrawal liability and the SPT's independent actuary's explanation of the withdrawal liability calculation. Am. Compl. ¶ 219. SPT further alleges that the Claims and Noticing Agent made RG Steel and/or its counsel and Renco and/or its counsel aware of the SPT's Proofs of Claim by providing copies shortly after they were received by KCC. Am. Compl. ¶¶ 220, 221. SPT's Proofs of Claim appeared on the exact same page of the Numerical Claims Register and next to the proofs of claim that Defendants Renco and Ilshar Capital filed in the RG Steel Bankruptcy. Am. Compl. ¶ 224. That Claims Register was emailed by the Delaware Bankruptcy Court via the ECF system to all attorneys whose appearances had been entered in the RG Steel Bankruptcy. Am. Compl. ¶ 225.

The purpose of the Claims and Noticing Agent's filing of the Claims Register was to give all of the parties actual notice of the proofs of claims filed in the RG Steel bankruptcy. Am. Compl. ¶ 228. SPT further alleges Renco and the Renco Controlled Group received actual notice of the SPT Notice and Demand on January 11, 2013, because three of Renco's attorneys, whose appearances were entered in the RG Steel Bankruptcy, received the Claims Register via the ECF system. Am. Compl. ¶¶ 229, 231. Three other attorneys who were not in the ECF system but had entered their appearances in the RG Steel Bankruptcy received the Claims Register by regular mail shortly after it was filed. Am. Compl. ¶ 231. The SPT Proofs of Claim were also included in two additional Claims Registers filed by Claims and Noticing Agent in 2013, one on April 8, 2013, and one on July 17, 2013, purportedly providing Renco and the Renco Controlled Group with actual notice of the SPT's Notice and Demand on those dates as well. Am. Compl. ¶ 232. SPT alleges that Renco and the Renco Controlled Group knew that the SPT's Proofs of Claim pertained to withdrawal liability because they had specifically structured the Cerberus Transaction to try to evade and avoid such withdrawal liability to the SPT, Am. Compl. ¶ 239, and because they were already involved in discussions with the Pension Benefit Guarantee Corporation ("PBGC") regarding withdrawal liability for the single-employer pension plans, and knew that there would inevitably be a claim. Am. Compl. ¶ 240.

According to SPT's reading of the law, submission of the Claims Register on January 11, 2013, inter alia, constituted Notice and Demand by the SPT, and triggered a 90 day clock for Defendants to file a Request for Review if they wanted to contest RG Steel's status in their controlled group. 29 U.S.C. §1399(b)(2)(A). Am. Compl. ¶ 281. If a Request for Review did not resolve all of the issues, any disputes were required to be resolved through arbitration. 29 U.S.C. §1401(a)(1). However, a party is required to timely request a review and initiate arbitration, or it

5

will be deemed to have waived all issues it could have arbitrated. 29 U.S.C. §1401(a)(1). Consequently, the amounts assessed by the plan sponsor would be "due and owing." 29 U.S.C. §1401(b)(1). SPT asserts that Renco did not submit a timely "Request for Review" under ERISA 4219(b)(2)(A), 29 U.S.C. 1399(b)(2)(A), following actual notice of the SPT's Notice and Demand for withdrawal liability. Am. Compl. ¶ 242. Consequently Renco did not submit a timely "Demand for Arbitration" under ERISA 4221(a)(1), 29 U.S.C. § 1401(a)(1), because a prerequisite to filing a timely Demand for Arbitration is the filing of a timely Request for Review. Am. Compl. ¶ 243.

On January 28, 2013, the PBGC filed an action against the Renco Controlled Group for the unfunded pension liabilities of RG Steel in the U.S. District Court for the Southern District of New York alleging that Renco acted with the fraudulent intent to prevent the PBGC from terminating the single-employer pension plans and that a principal purpose of the Cerberus Transaction was to evade unfunded pension liabilities. Am. Compl. ¶ 245. The case went to trial in December 2015 and settled prior to the Court's decision; Renco settled the case by guaranteeing all of the single-employer pension funds. Am. Compl. ¶ 197.

The SPT asserts that PBGC action alerted Renco and the Renco Controlled Group of the existence of similar withdrawal liability claims by the SPT. Am. Compl. ¶ 246. On August 30, 2013 counsel for Renco wrote to the SPT acknowledging Renco's receipt of the SPT's Proofs of Claim and attempted to submit an untimely Request for Review. Am. Compl. ¶ 248. SPT alleges that Renco's Request for Review was untimely because it was submitted more than 90 days after Renco received actual and/or construction notice of the SPT's Notice and Demand. Am. Compl. ¶ 249. In the August 30, 2013, letter, counsel for Renco declined to identify the date that Renco had received actual notice of the Proofs of Claim. Am. Compl. ¶ 250. Renco also contended, for

6

the first time, that due to the Cerberus Transaction, RG Steel was not part of the Renco Controlled Group and that the Renco Controlled Group was not liable for any withdrawal liability incurred by RG Steel to the SPT. Am. Compl. ¶ 251.

On February 14, 2014, the SPT, RG Steel Holdings LLC and the Renco Controlled Group entered into a Tolling Agreement. The Tolling Agreement tolled any Arbitration Demand Period that Renco may have had as of January 28, 2014. However, the Tolling Agreement reserved all of the SPT's rights to enforce withdrawal liability, including the SPT's right to contend that it had already issued a Notice and Demand to Renco and that the opportunity for Renco to demand review or arbitration had already passed. Am. Compl. ¶ 252. A Tolling Agreement Extension was entered into by the same parties on January 28, 2015. Am. Compl. ¶ 253. The SPT entered into the Tolling Agreements because the PBGC's lawsuit against Renco was much further along and a win for the PBGC could have acted as collateral estoppel in favor of the SPT. Am. Compl. ¶ 254 By letter dated March 10, 2016, counsel for the SPT sent Renco and the Renco Controlled Group a 60-Day Cure Notice pursuant to ERISA §4219(c)(5), 29 U.S.C. §1399(c)(5). Am. Compl. ¶ 255, Exhibit K. A finalized and executed settlement agreement between Renco and the PBGC was entered into on March 2, 2016. [ECF No. 33-1].

This action was initiated on February 22, 2016, and the Amended Complaint was filed on May 13, 2016. [ECF No. 33]. Count I alleges that Renco waived its right to arbitrate its defenses because it did not timely request review of the withdrawal liability after obtaining "actual and/or construct[ive]" notice of SPT's claim and is therefore liable by default for the entire $86 million in withdrawal liability. Am. Compl. at ¶¶ 248-49, 258-98. The SPT alleges it provided the required Notice and Demand to Renco and the Renco Controlled Group pursuant to MPPAA when it filed the Proofs of Claim in the RG Steel Bankruptcy on September 24, 2012,

7

and when the Proofs of Claim were listed on the Claims Registers filed with the court and emailed to Renco's counsel on January 11, 2013, April 8, 2013, and July 17, 2013. Am. Compl. ¶ 281.

Count II alleges that because a principle purpose of the Cerberus Transaction was to evade or avoid withdrawal liability, Renco should be considered within the RG Steel controlled group pursuant to Section 1392(c) and is liable for the $86 million on that basis. Am. Compl. at ¶¶ 299-306. SPT alleges that to the extent Renco disputes that a principal purpose of the transaction was to evade or avoid withdrawal liability, and thus disputes whether RG Steel was in the Renco Controlled Group when withdrawal liability was assessed, Renco has waived that defense because ERISA and MPPAA required that Renco seek arbitration of the issue, and neither Renco nor any member of the Renco Controlled Group timely requested arbitration. 29 U.S.C. §1401(a)(1). Am. Compl. ¶ 306.

Renco disagrees. On March 23, 2016, prior to the expiration of the tolling period, Renco attempted to initiate arbitration of SPT's claims by serving a demand for arbitration [ECF No. 20-5]. SPT has taken the position that it will not engage in arbitration and instead moves to enjoin that proceeding: on April 8, 2016, SPT filed a Motion to Stay the Arbitration, [ECF No. 20], to which Renco filed a Brief in Opposition. [ECF No. 29]. SPT filed a Reply Brief in Support of their Motion to Stay [ECF No. 30] and Renco filed a Sur-Reply [ECF No. 46].

On April 22, 2016, Renco moved to dismiss the original Complaint, after which SPT filed the Amended Complaint on May 13, 2016.[2] The first Motion to Dismiss was dismissed as moot on May 16, 2016. [ECF No. 34]. Thereafter, Renco filed a Motion to Dismiss the

---

[2] SPT originally claimed that Renco was on notice of SPT's withdrawal liability claims because Renco was served with proofs of claim filed in the RG Steel Bankruptcy. The order of appointment did not require KCC to provide all parties in the bankruptcy proceedings with proofs of claim. Rather, KCC periodically filed registers of the proofs of claim. *In re WP Steel Venture LLC*, Case No. 12-11661 (Bankr. D. Del. May 31, 2012, Jan. 10, 2013), Dkt. 5 and Dkt. 2004.

8

Amended Complaint on May 24, 2016 with Brief in Support. [ECF Nos. 36, 37]. Plaintiff filed a Brief in Opposition on June 13, 2016 [ECF No. 44], and Defendants have filed a reply [ECF No. 45].

The motions are now ripe for disposition.

We have jurisdiction pursuant to 29 U.S.C. §§ 1132(e), 1132 (f) and 1451(c).

**B. Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it "fail[s] to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). A court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

In *Iqbal*, the Court laid out a two-part approach to reviewing a motion to dismiss under Rule 12(b)(6). First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. at 678. Thus, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive the motion; "instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'" *Id.; Phillips*, 515 F.3d at 233 (quoting *Twombly,* 550 U.S. at 563 n.8). Second, the court must determine whether the complaint "states a plausible claim for relief, . . . [which is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678. Only if "the '[f]actual allegations...raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

As noted *supra*, SPT has attached numerous documents to its Amended Complaint. Generally, a district court may not consider matters outside of the Complaint when ruling on a Rule 12(b)(6) motion to dismiss. We may consider for Rule 12(b)(6) purposes: (i) exhibits that are attached to the complaint, (ii) matters of public record, and (iii) any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). Furthermore, if a complaint is subject to Rule 12(b)(6) dismissal, the court must permit a curative amendment unless such an amendment would be inequitable or futile. *See Alston v. Parker,* 363 F.3d 229, 235 (3d Cir. 2004).

Courts have held that where the claim is arbitrable, dismissal is appropriate for failure to state a claim pursuant to Rule 12(b)(6). *See Nationwide Ins. Co. v. Patterson*, 953 F.2d 44, 45 n.1

(3d Cir. 1991) (dismissal "because the dispute is covered by an arbitration provision is generally effected under Rule 12(b)(6) covering dismissals for failure to state a claim upon which relief can be granted"); *Swerdlick v. Am. Compressed Gases, Inc.*, No. 14-cv-4774, 2015 WL 1422046, at *9 (D.N.J. Mar. 26, 2015) (granting dismissal pursuant to Rule 12(b)(6) where the parties disputed the timeliness of the plan's notice of withdrawal liability to a former member of the employer's controlled group), *appeal stayed for arbitration*, No. 15-1983 (3d Cir.)

With this standard in mind, we now turn to the pending motions.

**C. Discussion**

    **1. Motion to Dismiss**

The MPPAA was enacted because Congress found that existing statutes "did not adequately protect plans from the adverse consequences that resulted when individual employers terminate[d] their participation in, or withdr[e]w from, multiemployer plans." *Pension Ben. Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 722 (1984). The MPPAA addressed this problem by assessing such employers with withdrawal liability, defined in the statute as the employer's adjusted "allocable amount of unfunded vested benefits." *Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia,* 830 F.2d 1241, 1243–44 (3d Cir.1987) (citing 29 U.S.C. § 1381(b)(1) (1982)).

Provisions for the quick and informal resolution of withdrawal liability disputes are an integral part of MPPAA's statutory scheme. *Flying Tiger,* 830 F.2d at 1244. The MPPAA requires a plan's trustees to determine initially whether a withdrawal has occurred. 29 U.S.C. §§ 1382(1), 1399(b)(1)(A)(i). Broadly speaking, when the trustees conclude that a withdrawal has taken place, they must then notify the employer of the amount of liability and demand payment in accordance with an amortization schedule. 29 U.S.C. §§ 1382(2), 1382(3), 1399(b)(1)(B). The

Notice must include the amount of liability and a schedule of installment payments, and the withdrawn employer must begin paying according to the schedule. *See Robbins v. Pepsi–Cola Metro. Bottling Co.,* 800 F.2d 641, 642–43 (7th Cir.1986) (per curiam); *see also Penske Logistics, LLC v. Freight Drivers & Helpers Local Union No. 557,* 2009 WL 1383298, at *2 (E.D. Pa. 2009). Thereafter, the employer may within ninety days ask the trustees to conduct a reasonable "review" of the computed liability. 29 U.S.C. § 1399(b)(2)(A)(i) (1982). If a dispute remains after the plan sponsor responds, either party may initiate arbitration proceedings within sixty (60) days. The MPPAA provides that

> [a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of ... this title shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60–day period.

29 U.S.C. § 1401(b)(1). Finally, "[u]pon completion of the arbitration proceedings in favor of one of the parties," MPPAA permits "any party thereto" to bring an action "to enforce, vacate or modify the arbitrator's award" in the appropriate federal district court. *Flying Tiger Line,* 830 F.2d at 1244 (quoting 29 U.S.C. § 1401(b)(2) (1982)); *Swerdlick,* 2015 WL 1422046, at *3-4.

We will take the Counts out of turn, and first, we address the argument in favor of the dismissal of Count II.

### a. Count II: Evade or Avoid liability

Renco argues in its Brief in Support of the Motion to Dismiss that Count II of the Amended Complaint should be dismissed in favor of arbitration. [ECF No. 37 at 10]. Count II alleges withdrawal liability pursuant to 29 U.S.C. § 1392(c). Am. Compl. ¶¶ 300, 305. That section of ERISA provides:

**(c) Transactions to evade or avoid liability**

> If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction.

29 U.S.C.A. § 1392 (West).

Defendants argue this claim should be dismissed in favor of arbitration based on the following. The Third Circuit is unambiguous in requiring that arbitrators resolve the merits of an "evade or avoid" claim, not judges. *See Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund Inc. –Pension Fund v. Kero Leasing Corp.*, 377 F.3d 288, 301 n.13 (3d Cir. 2004); *Flying Tiger Line*, 830 F.2d at 1247-48.

> We have interpreted the MPPAA to require that "where the party against which withdrawal liability is being asserted was certainly part of the controlled group of an employer subject to the MPPAA at some point in time, and where the issues in dispute fall within the purview of MPPAA provisions that are explicitly designated for arbitration," the parties must comply with the MPPAA arbitration provisions in resolving their dispute. *Flying Tiger,* 830 F.2d at 1247. In other words, a federal district court may not, for example, make a determination as to whether a particular transaction was undertaken in order to evade or avoid withdrawal liability; rather, that issue is one that is explicitly reserved for resolution through arbitration. *Id.; see also Galgay,* 105 F.3d at 141.

<u>Kero Leasing Corp.</u>, 377 F.3d at 301, n.13. Plaintiff's Brief in Opposition to the Motion to Dismiss is silent as to this argument, and therefore we assume that it concedes that the "evade or avoid" claim at Count II is properly subject to arbitration.

It is therefore respectfully recommended that Count II be dismissed in favor of arbitration.

### b. Count I: Withdrawal Liability

ERISA divides into two separate statutory sections the procedures for asserting defenses to a withdrawal liability claim. Section 1399 governs the sufficiency of a plan's initial notice of its claim and the procedures for an alleged employer's response:

> 1. Section 1399(b)(1) – Serve Proper Notice. Plaintiff must, "[a]s soon as practicable," serve proper notice of its claim. See 29 U.S.C. § 1399(b)(1).
>
> 2. Section 1399(b)(2) – Challenge to the Notice. If the employer does not believe that it owes payment consistent with the sponsor's notice, within "90 days after the employer receives the notice," it can challenge the plan's claim or seek additional information. § 1399(b)(2)(A).

The requirements for formally demanding arbitration, in contrast, are set forth in 29 U.S.C. § 1401, and the deadline for doing so is based on the date of the employer's challenge under 29 U.S.C. § 1399(b)(2):

> 3. Section 1401(a)(1) – Demand Arbitration. Either party can choose to initiate arbitration at the earlier of (a) 60 days after the plan sponsor responds to the employer's challenge or (b) 180 days after the employer's challenge.

Where a dispute arises under Section 1399, it is subject to arbitration, even in cases alleging waiver. Where dispute arises under Section 1401, it is not.

In *Nat'l Pension Plan of the UNITE HERE Workers Pension Fund v. Swan Finishing Co.*, No. 05-cv-6819, 2006 WL 1341301 (S.D. N.Y. Feb. 10, 2006), the fund argued waiver in a similar situation as here, contending the defendant was "precluded from challenging the Fund's determination of withdrawal liability because it received effective notice of the Fund's determination at some time prior to September 7, 2005, but did not request review or arbitration within the time period proscribed by the statute." *Swan Finishing*, 2006 WL 1341301, at *2. That dispute over waiver was one that arose under Section 1399 and therefore required arbitration; the court granted defendant's motion to arbitrate and held that "plaintiffs must arbitrate the issues of whether [the employer] waived its right to contest the Fund's determination of its withdrawal liability by failing to make a timely challenge" because there were disputed questions of fact about when the employer received notice of the claim in the first place. *Id.* ("The parties' dispute over the date on which Swan received effective notice is an issue that must be resolved through

arbitration."); *I.L.G.W.U. Nat'l Ret. Fund v. Meredith Grey, Inc.*, 986 F. Supp. 816, 825 (S.D.N.Y. 1997) ("Any dispute concerning the notice or amount of withdrawal liability shall be resolved through arbitration.") (citation omitted).

In contrast, courts have held that disputes about the timeliness of an arbitration demand (not at issue here, as Renco served its challenge on August 30, 2013, and the deadline to demand arbitration was tolled for a period of time) under Section 1401 are outside of ERISA's arbitration provision. SPT cites *Doherty v. Teamsters Pension Tr. Fund,* 16 F.3d 1386 (3d Cir. 1994), to argue that we must decide the timeliness of an arbitration demand. In that case, however, it was undisputed that the alleged employer had timely submitted its challenge for review under Section 1399(b)(2). The issue in that case did not center on that challenge or the sufficiency of the plan's notice under Section 1399(b)(1), but on how to compute the number of days for demanding arbitration under Section 1401. *Doherty*, 16 F.3d at 1391 (noting the issue was whether the "district court wrongly found the requests for arbitration untimely" under Section 1401, not the challenge under Section 1399). In permitting litigation over that issue, the Third Circuit specifically noted that unlike Section 1399, the Section 1401 deadlines are not within ERISA's arbitration provision. *See Doherty*, 16 F.3d at 1391 n.4. There was no dispute under Section 1399 in *Doherty*, so arbitration was not required.

In the case at bar, we agree with Renco that the questions presented, that is, whether Renco failed to serve a timely request for review and whether the notice and demand in a Chapter 11 bankruptcy must include a schedule of payments, concern compliance with Section 1399, and thus, are subject to arbitration. Where there is a dispute over whether and when a defendant received proper notice of the claim to begin with, we defer to arbitration. It is true under the statute that a defendant that received proper notice of a withdrawal liability claim can

15

waive its defenses by not initiating arbitration, however, no such waiver occurs if the issue is whether or not it received adequate notice of a withdrawal liability claim directed toward it in the first place.

Even so, SPT does not appear to have provided adequate, actual notice of the withdrawal liability Renco. *See Kero Leasing*, 377 F.3d at 298; *Swerdlick*, 2015 WL 1422046, at*6-7; *Bd. of Trs. of Plumbers, Pipe Fitters & Mech. Equip. Serv., Local Union 392 Pension Fund v. Airstream Mech.*, No. 08-cv-901, 2010 WL 3656036, at *10 (S.D. Ohio Aug. 11, 2010) ("[D]efendants who are *not* members of the control group at the time notice is provided are not deemed to have received notice"). The notice requirements are mandatory and notice is a precondition to a suit in federal court under these circumstances. *Connors v. Peles*, 724 F. Supp. 1538, 1572-73 (W.D. Pa. 1989).

Furthermore, the claims registers and the proofs of claim are facially defective under the statute. Section 1399 requires that proper notice must: (i) be served on the employer "[a]s soon as practicable after an employer's complete or partial withdrawal"; (ii) state the amount of alleged liability; (iii) include a schedule for payments of that liability to the plan; and (iv) demand payment in accordance with the schedule. 29 U.S.C. § 1399(b)(1). The claims registers provided to KCC are attached to the First Amended Complaint as Exhibits H and I. It is clear that they failed to provide a schedule and failed to demand payment in accordance with a schedule. They are not addressed to Renco, and SPT's claims appear among thousands of other claims listed in those 60 pages. It seems far-fetched that defendants would be able to challenge any purported schedule prior to deciding whether to pursue arbitration under these circumstances, or that they were aware of a risk of default by not taking action. And there is no case law to support SPT's contention that claims registers suffice. As to the proofs of claim,

16

these were likewise inadequate, insofar as they addressed RG Steel, did not provide basic due process or indicate that SPT would seek to hold Renco liable under an "evade or avoid" theory of liability.

In *Swerdlick*, a pension plan sued American Compressed Gases, Inc. ("ACG") regarding the withdrawal liability of another company, Dry Ice. 2015 WL 1422046, at *1. The complaint alleged that ACG had been the sole owner of Dry Ice and had divested its interest prior to Dry Ice's withdrawal. *Id.* The plan also alleged that ACG had actual notice of its claim under Section 1399(b)(1) because a notice addressed to Dry Ice was served at ACG's principal place of business. *Id.* at *4. The court, however, rejected that argument and dismissed the plan's complaint. Even accepting the allegations as true, the plan could not "rely on the Notice served on Dry Ice to avoid arbitration with" ACG. *Id.* at *7; s*ee also Connors v. Peles*, 724 F Supp. 1538, 1573 (W.D. Pa. 1989).

SPT relies on *Chicago Truck Drivers v. El Paso CGP Co.,* 525 F.3d 591, 598 (7th Cir. 2008), which originates in another Circuit and thus is not binding, wherein the alleged former member of a controlled group was deemed to have received actual knowledge of a pension fund's proof of claim for withdrawal liability whenever one of the defendants' attorneys became aware of the proof of claim while performing due diligence in another lawsuit. The Seventh Circuit held that the information communicated to the employer was adequate for statutory purposes. *Id.* at 600-01. The decision in *El Paso* discusses how schedules serve little purpose where the recipient is in bankruptcy, where the bankruptcy court can ultimately set its own schedule. *Id.* at 598. However, the notice in *El Paso* included a schedule, which is not the case here. Moreover, neither Renco nor former members of the RG Steel controlled group were specifically listed. Renco was a non-debtor, former controlled group member still entitled to the

protections of notice of the pendency of an action (challenging the impropriety of the Cerberus Transaction) such that it could present its objections thereto. *See Central States, Se. & Sw Areas Pension Fund v. Slotky,* 956 F.2d 1369, 1375 (7th Cir. 1992). Finally, we find that constructive notice was not triggered, Renco not being part of RG Steel's controlled group when the proofs of claim were filed. *See Bd. Of Trustees of Trucking Empl. of N. Jersey Welfare Fund Inc. – Pension Fund v. Kero Leasing Corp.*, 377 F.3d 288, 299 n. 10, 300 (3d Cir. 2004). SPT has not alleged facts to support its plausible argument that Renco received the proofs of claim.

It is therefore respectfully recommended that Count I of the Amended Complaint should be dismissed, and that the parties be directed to proceed to arbitration in accordance with the applicable federal regulations.

### 2. Motion to Stay Arbitration

Although it is recommended that the Amended Complaint be dismissed, out of an abundance of caution and in the interest of fairness, we address SPT's Motion to Stay Arbitration. Such requests to enjoin MPPAA arbitration are generally put to the same test as applied to requests to enter a preliminary injunction. *Swerdlick*, 2015 WL 1422046, at *2; *Elevator Co. v. Int'l Union of Elevator Contrs.*, 2011 WL 222508, at *2 (W.D. Pa. Jan 21, 2011). Thus, SPT has the burden to demonstrate that 1) it will likely succeed on the merits, 2) it will suffer irreparable harm by arbitrating its claims, 3) litigation instead of arbitration will not disproportionately harm Renco, and 4) the public interest favors litigation. *Id.*

As the analysis set forth above shows, and after a careful review of the briefs of the parties, we find that SPT has not met its burden. We express no opinion on the likelihood of success on the merits as to evade and avoid claim, that matter better left in the hands of the arbitration panel, but as to the adequacy of notice claim, for the reasons previously stated, SPT

has not met its burden. In addition, the interim payment requirement which would otherwise be triggered clearly contemplates an expeditious and inexpensive adjudication through arbitration, a process which provides meaningful procedural protections. Thus, the equitable considerations favor arbitration. That timetable would work in favor of the litigants and best avoids irreparable harm. Moreover, interim payments may take the form of prehearing deprivation for Renco, which hardly seems fair. The parties should select an arbitrator and schedule a hearing on the claims as soon as possible.

It is therefore respectfully recommended that the Motion to Stay Arbitration be denied.

### III. CONCLUSION

For the forgoing reasons, it is respectfully recommended that Defendant's Motion to dismiss [ECF No. 36] be granted in full and Plaintiff's Motion to Stay Arbitration [ECF No. 20] be denied.

In accordance with Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules pertaining to Magistrate Judges, the parties are granted fourteen days to file written objections to this Report and Recommendation. Failure to do so may waive the right to appeal. Any party opposing written objections shall have fourteen days after the service of such objections to respond thereto.

Dated: August 22, 2016  Respectfully submitted,

/s/ Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

cc:  Hon. Terrence F. McVerry
     record counsel